IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| LOMMIA FAYE STREET, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:21-cv-941 |
| | ) | |
| JOHN SANTIAGO, | ) | |
| TRAVIS J. NELLIS, and | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff brings this action against the United States and two security officers with the United States Department of Veteran's Affairs assigned to the VA Hospital in Kernersville, North Carolina. (Doc. 1 at 2.) Plaintiff alleges that on June 12, 2019, while at the VA Hospital for medical treatment, she was wrongfully detained, assaulted, and prosecuted by two security officers, John Santiago, ("Santiago") and Travis Nellis ("Nellis"). (Id. at 3-9.) Although Santiago, Nellis, and the United States are named defendants in the complaint, the United States has been substituted as the sole defendant for the individual defendants pursuant to 28 U.S.C. § 2679. (Docs. 17, 23.)

The United States ("Defendant") moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Doc. 20.) While this court agrees with Defendant that the videos appear to contradict many of Plaintiff's allegations, the record at present does not allow this court to find whether the initial detention of Plaintiff was based upon reasonable suspicion. Because that initial detention is a critical factor in determining the plausibility of Plaintiff's claims, this court is bound to accept as true Plaintiff's allegation that "Santiago had no reasonable suspicion that Street had committed, or was about to commit, any crime when he seized Street." (Doc. 1 at 7.) Defendant's motion will be denied as to the claims alleging assault, false imprisonment, and an unconstitutional seizure under the Fourth Amendment. Defendant's motion will be granted on the malicious prosecution claim.

## I. FACTUAL AND PROCEDURAL HISTORY

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." <u>Ray v. Roane</u>, 948 F.3d 222, 226 (4th Cir. 2020). The facts, in summary and taken in the light most favorable to Plaintiff, are as follows.

On June 12, 2019, Plaintiff went to the VA Hospital in Kernersville, North Carolina for a medical appointment. (Compl.

- 2 -

(Doc. 1) at 3.)[1] Plaintiff contends that while waiting to check in at a kiosk, another patient cut in line in front of her. (Id.) Plaintiff alleges that she told the patient it was her turn, removed the patient's card from the kiosk and handed it to the patient. (Id.) A brief confrontation ensued. (Id. at 3-4.) A "volunteer receptionist reported the kiosk event to Santiago, who spoke briefly with Street," after Plaintiff's confrontation with the unidentified patient. (Id. at 4.)

As Plaintiff prepared to leave the VA Hospital, she was stopped by Santiago. (Id.) According to Plaintiff, "Santiago blocked her way, and initiated a physical confrontation, which involved Santiago throwing Street to the floor, and restraining her with handcuffs." (Id.)

Plaintiff asserts five claims in her complaint: (1) Assault and Battery, (2) False Imprisonment, (3) Malicious Prosecution, (4) an unconstitutional seizure and use of force claim under the Fourth Amendment, and (5) a Bivens claim. (Id. at 6-9.) However, the Bivens claim appears to be duplicative of the Fourth Amendment claim. The Supreme Court created a federal cause of action against federal officers for their violations of the

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

Fourth Amendment in <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 389 (1971). This court is not aware of a separate state cause of action for a violation of the Fourth Amendment. (<u>See</u> Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 11-12.)

In addition to the allegations contained in the complaint, Plaintiff filed videos from the Kernersville VA, which show the interactions between Plaintiff and the unknown patient and Plaintiff and Santiago. (Doc. 1-3.) Plaintiff includes the videos as part of her allegations and contends that the video recordings "show clearly that Plaintiff did not assault the man who cut in front of her . . . and show that Santiago detained her, blocked her passage, and violently assaulted her . . ." (Compl. (Doc. 1) at 6.) Defendant also filed the same videos in support of its motion to dismiss, although Defendant's videos were rotated and enlarged. (Doc. 21.) While Plaintiff mentions that Defendant's videos are "altered," (Br. in Opp'n to Mot. to Dismiss (Doc. 25) at 1), neither party disputes the relevance or authenticity of the videos. Defendant argues, and Plaintiff does not dispute, that video incorporated into a complaint may be considered for purposes of deciding a motion to dismiss. (Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 7.)

As the Fourth Circuit has explained, "[w]e generally do not consider extrinsic evidence when evaluating the sufficiency of a complaint. However, we may properly consider documents attached to a complaint or motion to dismiss 'so long as they are integral to the complaint and authentic.'" Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014) (quoting Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). Consistent with that holding, a panel of the Fourth Circuit held that a video, integral to a complaint, may properly be viewed by the court in ruling on a motion to dismiss pursuant to Rule 12(b)(6). Zsogray v. Cnty. Comm. of Lewis Cnty., 709 F. App'x 178, 179 (4th Cir. 2018). This court concludes, under the circumstances present here, that the videos may be considered in the analysis of the facts that have been plausibly alleged.

After careful review of the videos[2] submitted by both parties, this court finds that the videos appear to contradict a number of allegations in the complaint even when viewed in the light most favorable to the non-moving party. For purposes of the pending motion only, this court finds that Plaintiff's interaction with the unknown patient was more aggressive than portrayed in the complaint. It does not appear to this court

---

[2] The videos do not have audio. Therefore, at least for purposes of this motion, there is no audio recording of the relevant activity.

- 5 -

that Plaintiff simply handed the card back, as Plaintiff alleges. (See Compl. (Doc. 1) at 3.) Furthermore, it appears Plaintiff escalated the confrontation with Santiago into a physical confrontation by trying to walk around Santiago, push past Santiago with her body in the hallway, and then push Santiago with her body and arms in the vestibule. Plaintiff alleges that Santiago initiated a physical confrontation, (id. at 4); after watching the video, this court disagrees.

Plaintiff alleges that Santiago threw Plaintiff to the floor. (Id.) The reason for Plaintiff's fall to the floor is perhaps subject to some interpretation. However, in this court's opinion, it appears most reasonable to conclude that Plaintiff escalated the physical confrontation in the vestibule by pushing Santiago with her hands, arms, and body. Plaintiff appears to have fallen as Santiago stood his ground.

Nevertheless, the court does not find it necessary to resolve these factual issues. Neither the complaint nor the videos fully explain what Santiago knew when he initially detained Plaintiff. Drawing all reasonable inferences in favor of Plaintiff, Plaintiff's allegations that Santiago "had no reasonable suspicion" and "unreasonably seized Street," (id. at 8), constitute an issue of fact that cannot be resolved at this stage of the proceedings.

## II. **STANDARD OF REVIEW**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." Twombly, 500 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. A court cannot "ignore a clear failure in the pleadings to allege any facts which set forth a claim." Estate of Williams-Moore, 335 F. Supp. 2d at 646. Consequently, even given the deferential

standard allocated to pleadings at the motion to dismiss stage, a court will not accept mere legal conclusions as true and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

### III. ANALYSIS

#### A. Motion to Dismiss Claims Against Santiago

Plaintiff alleges three state law claims — assault, false imprisonment, malicious prosecution — and one federal claim — an unconstitutional seizure under the Fourth Amendment — as to Santiago. Each of Plaintiff's claims is predicated upon an initial unlawful detention by Santiago. In other words, if Santiago was justified in detaining Plaintiff, then the videos demonstrate, nearly conclusively, that Santiago's interaction with Plaintiff was justified and Plaintiff's claims are subject to dismissal. On the other hand, if Santiago seized Plaintiff without justification, then the subsequent activity could plausibly support Plaintiff's claims.

Plaintiff's First Claim for Relief is a claim of assault and battery. (Compl. (Doc. 1) at 6.) "Under the common law, a law enforcement officer has the right, in making an arrest and securing control of an offender, to use only such force as may be reasonably necessary to overcome any resistance and properly

- 8 -

discharge his duties." Myrick v. Cooley, 91 N.C. App. 209, 215, 371 S.E.2d 492, 496 (1988) (citing State v. Fain, 229 N.C. 644, 50 S.E.2d 904 (1948)). Similarly, during a Terry stop, under North Carolina law, "police can use 'measures of force such as placing handcuffs on suspects, placing the suspect in the back of police cruisers, drawing weapons, and other forms of force typically used during an arrest.'" State v. Thorpe, 232 N.C. App. 468, 478, 754 S.E.2d 213, 221 (2014) (citing State v. Campbell, 188 N.C. App. 701, 709, 656 S.E.2d 721, 727 (2008)).

After reviewing the videos, this court finds that Santiago did not commit an assault, or use unreasonable force, if he lawfully detained Plaintiff at the start of the confrontation. Under those circumstances, the motion to dismiss the First Claim for Relief should be granted. On the other hand, if Santiago's detention of Plaintiff was not justified, then Plaintiff has plausibly alleged that Santiago's actions in physically blocking Plaintiff's egress from the VA Hospital could constitute an assault.

The elements of a claim of false imprisonment also include an element relating to the justification of the detention alleged to constitute false imprisonment. "False imprisonment is the illegal restraint of the person of any one against his will." Hales v. McCrory-McLellan Corp., 260 N.C. 568, 570, 133

- 9 -

S.E.2d 225, 227 (1963). "The elements of false imprisonment include: '(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will.'" Wilkerson v. Duke Univ., 229 N.C. App. 670, 674, 748 S.E.2d 154, 158 (2013) (citing Rousselo v. Starling, 128 N.C. App. 439, 449, 495 S.E.2d 725, 732 (1998)). Because false imprisonment requires proof that any restraint was illegal, if Santiago had lawful authority to detain Plaintiff, then her false imprisonment claim is without merit and subject to dismissal.

The elements of Plaintiff's Third Claim, malicious prosecution, require Plaintiff to establish four elements:

> (1) the defendant initiated the earlier proceeding;
> (2) malice on the part of the defendant in doing so;
> (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff. The presence of probable cause necessarily defeats plaintiff's claim.

Adams v. City of Raleigh, 245 N.C. App. 330, 335, 782 S.E.2d 108, 112–13 (2016) (internal citations omitted) (cleaned up). Plaintiff alleges two offenses as "the earlier proceeding," that is, Disorderly Conduct and Delaying, Obstructing, and Resisting an Officer. (Compl. (Doc. 1) at 7.) If Santiago had either reasonable suspicion or probable cause to detain Plaintiff in the first instance, then there is probable cause to believe

- 10 -

Case 1:21-cv-00941-WO-JEP   Document 27   Filed 03/07/23   Page 10 of 20

Plaintiff's response to the detention was disorderly and obstructive.

Plaintiff's Fourth and Fifth Claims for Relief allege violations of the Fourth Amendment. "In 1971, the Supreme Court announced a federal damages remedy to redress violations of the fourth amendment by federal law enforcement officers." Norton v. United States, 581 F.2d 390, 393 (4th Cir. 1978). "As in other Fourth Amendment contexts, however, the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

As with the other three claims, if Santiago's detention of Plaintiff was justified, then the videos establish that any claims based upon an alleged violation of the Fourth Amendment are subject to dismissal. The Fourth Circuit has recognized "that drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for Miranda purposes." United States v. Leshuk, 65 F.3d 1105, 1109-10 (4th Cir. 1995).

Turning to the motion to dismiss filed in this case, the Government argues that "the facts show that the initial detention of Plaintiff, for less than 2 minutes, was not an unreasonable seizure of Plaintiff." (Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 13.) The Government argues that

> Office[r] Santiago had a reasonable suspicion based on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." He was fulfilling his duty to investigate the matter when he approached Plaintiff and detained her initially for less than 2 minutes.

(Id. at 14 (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968).)

> Under well-established doctrine, a police officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop — known as a "Terry stop" — predicated on reasonable, articulable suspicion that "criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968); see Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Reasonable suspicion is "a less demanding standard than probable cause" but requires "at least a minimal level of objective justification for making the stop." Wardlow, 528 U.S. at 123.

United States v. Mitchell, 963 F.3d 385, 390 (4th Cir. 2020) (cleaned up). "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop or search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. . . ." Ornelas v. United States, 517 U.S. 690, 696 (1996). Therefore, to determine whether Santiago had a

- 12 -

Case 1:21-cv-00941-WO-JEP   Document 27   Filed 03/07/23   Page 12 of 20

reasonable suspicion justifying a brief detention of Plaintiff, the historical facts leading up to the detention must be determined.

The Defendant's argument that Santiago had a reasonable suspicion is founded upon facts purportedly known to Santiago at the time of the detention. (See Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 13-14.) However, this court is not able to determine from the record what historical facts were known to Santiago at the time of the detention. Consistent with the facts argued by the Government, Plaintiff alleges that a "volunteer receptionist reported the kiosk event to Santiago." (Compl. (Doc. 1) at 4.) However, contrary to the Government's argument, there is no evidence as to what the receptionist may have told Santiago. Similarly, while the Government argues that Santiago knew Plaintiff was waiting in the lobby for an escort, (Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 14), Plaintiff only alleges that a "physician made arrangements for a uniformed escort to meet Street in the lobby to escort her to her car," (Compl. (Doc. 1) at 4). The record does not disclose whether

- 13 -

Case 1:21-cv-00941-WO-JEP   Document 27   Filed 03/07/23   Page 13 of 20

that information was communicated to Santiago or any additional facts Santiago may have known before detaining Plaintiff.[3]

This court finds that Defendant's motion to dismiss should be denied as to Plaintiff's claims of assault, false imprisonment, and unconstitutional seizure against Santiago.

**B.  Motion to Dismiss Claims Against Nellis**

Defendant argues that the allegations against Nellis are insufficient to state a Bivens claim and that Nellis should be dismissed from this action. (Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 20.) Nellis is named as a defendant in Plaintiff's Second, Third, Fourth, and Fifth Claims for Relief. (Compl. (Doc. 1) at 6-9.) The facts alleged in the complaint as to Nellis are very limited. However, Plaintiff alleges that "Santiago and Nellis arrested Street and removed her to a room on the third floor," "Santiago and Nellis charged Street with Resisting and Obstructing an Officer," "Santiago and Nellis intentionally detained Street against her will," and "Santiago and Nellis caused criminal charges to be brought against" Plaintiff. (Id. at 5-7.) While the allegations as to Nellis are

---

[3] Plaintiff attached her administrative claim to the complaint. (Doc. 1-1.) Within that file are Santiago and Nellis' reports. (See id. at 7, 22-44.) Because the parties have not addressed these reports, this court declines to consider those facts in reaching a decision. This court will simply note that Santiago's report, as submitted by Plaintiff, describes a different set of facts from those alleged by Plaintiff.

vague and loosely drafted, Plaintiff has plausibly alleged detention and criminal charges. The specific role Nellis may have had in the relevant events will have to be determined following discovery.

C.  <u>**Motion to Dismiss the Malicious Prosecution Claim**</u>

Defendant argues that the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), bars Plaintiff's Third Claim for Relief, a malicious prosecution claim. (Br. in Supp. of Defs.' Mot. to Dismiss (Doc. 22) at 20.) Relying in part upon <u>Medina v. United States</u>, 259 F.3d 220 (4th Cir. 2001), Defendant explains persuasively and at length why the malicious prosecution claim should be dismissed. (<u>Id.</u> at 20-22.) Plaintiff asks this court not to dismiss the malicious prosecution claim at this time and instead permit discovery so she may determine whether the function Santiago exercised "was based on considerations of public policy." (Br. in Opp'n to Mot. to Dismiss (Doc. 25) at 12.) This court finds that further discovery on the issue is unnecessary and will grant Defendant's motion to dismiss Plaintiff's malicious prosecution claim.

As a sovereign, the United States and its agencies are immune from suit absent a waiver of that immunity. <u>F.D.I.C. v. Meyer</u>, 510 U.S. 471, 475 (1994). A plaintiff bears the burden of demonstrating a waiver of that immunity and that an exception to

- 15 -

the waiver does not apply. See Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005); see also Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995) ("[T]he party who sues the United States bears the burden of pointing to an unequivocal waiver of immunity.") (cleaned up). If a plaintiff fails to meet that burden, then the court lacks subject matter jurisdiction and must dismiss the suit. See Welch, 409 F.3d at 649, 651.

The FTCA provides "a limited congressional waiver of sovereign immunity for injury or loss caused by the negligent or wrongful act of a Government employee acting within the scope of his or her employment." Medina, 259 F.3d at 223. Accordingly, Congress has carved out numerous exceptions from its general waiver of sovereign immunity. The discretionary function exception provides:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). Courts use a two-prong test to determine whether the discretionary function exception applies: (1) "the challenged conduct must 'be the product of judgment or choice,' i.e., the exception does not apply when the employee is merely following 'a federal statute, regulation, or policy

[that] specifically prescribes a course of action;'" and (2) "the challenged conduct must be 'based on considerations of public policy.'" Medina, 259 F.3d at 226 (citing Berkovitz v. United States, 486 U.S. 531, 536-37 (1988)). The elements of this test are interrelated; "if a government employee has discretion under the first [discretionary function exception] prong, . . . it 'must be presumed' that his acts 'are grounded in policy when exercising that discretion.'" Blanco Ayala v. United States, 386 F. Supp. 3d 635, 642 (E.D. Va. 2019) (citations omitted).

"[T]he investigation of (potential) crimes is a discretion-laden subject." Blankenship v. United States, No. 20-1642, 2022 WL 1768858, at *3 (4th Cir. June 1, 2022). To that end, the Fourth Circuit has held that the decision to prosecute is the product of judgment or choice. See id. (holding the discretionary function exception applied to a malicious prosecution claim against VA police officers); see also Medina, 259 F.3d, 226-29 (holding the discretionary function exception applied to a malicious prosecution claim against Immigration and Naturalization Service agents for arresting and instituting deportation proceedings against the plaintiff); Burgess v. Watson, No. 1:12CV810, 2014 WL 4540256, at *5 (M.D.N.C. Sept. 11, 2014) (holding the discretionary function exception applied

to the plaintiff's claim of malicious prosecution against an ATF agent).

In Blankenship, the Fourth Circuit held that two VA police officers were exercising their judgment when they arrested and prosecuted the plaintiff for theft. 2022 WL 1768858, at *3. In accord with that holding, this court finds that Santiago and Nellis' decision to charge Plaintiff with Disorderly Conduct and Delaying, Obstructing, and Resisting an Officer was "the product of judgment or choice." Medina, 259 F.3d at 226. As to the second prong, this court concludes, "that the VA officers' actions 'investigating and responding to potential violations of . . . law,' including the[] decision[] to . . . prosecute, [was] 'based on considerations of public policy.'" Blankenship, 2022 WL 1768858, at *4.

Plaintiff does not directly argue that Santiago's decision to arrest her fell outside of the discretion granted to him as a VA police officer. Instead, she argues she "should be permitted the opportunity to discover the extent to which the policies, regulations, and statutes of the [VA] grant discretionary authority to Santiago to behave as he did." (Br. in Opp'n to Mot. to Dismiss (Doc. 25) at 12.) This argument is insufficient to satisfy Plaintiff's burden to "point to an unequivocal waiver of immunity." Williams, 50 F.3d at 304 (cleaned up). Moreover,

- 18 -

in light of a recent Fourth Circuit decision that VA police officers' decisions to prosecute are discretionary and based on considerations of public policy, see Blankenship, 2022 WL 1768858, this court is not persuaded that further discovery would indicate Santiago and Nellis' prosecution of Plaintiff fell outside their discretionary authority.

Therefore, this court finds that it lacks subject matter jurisdiction over Plaintiff's malicious prosecution claim.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion to Dismiss, (Doc. 20), will be denied as to Plaintiff's claims of assault, false imprisonment, and unconstitutional seizure under the Fourth Amendment because Plaintiff's allegations, taken in the light most favorable to Plaintiff, do not establish that Santiago's initial detention of Plaintiff was based on reasonable suspicion. Defendant's motion to dismiss will be granted as to Plaintiff's malicious prosecution claim because Santiago and Nellis' prosecution of Plaintiff was an exercise of a discretionary function.

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, (Doc. 20), is **GRANTED IN PART AND DENIED IN PART**. The motion is

**GRANTED** as to Plaintiff's Malicious Prosecution Claim (Third Claim for Relief). This claim is hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendant's motion is **DENIED** as to the First, Second, and Fourth Claims for Relief. The Fifth Claim for Relief is construed as duplicative of the Fourth Claim for Relief.

This the 7th day of March, 2023.

_____
United States District Judge